**UNITED STATES, Appellee,**

v.

**Robert VOCCOLA, Defendant, Appellant.**

**No. 96–1182.**

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1996.

Decided Nov. 5, 1996.

David L. Martin, Providence, RI, for defendant, appellant.

Sheldon Whitehouse, United States Attorney for Rhode Island, Providence, RI, for appellee.

Before BOUDIN, Circuit Judge, and BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

BOWNES, Senior Circuit Judge.

Defendant-appellant raises three issues in this appeal. They are: (1) the denial of defendant's motion for recusal of the sentencing judge; (2) whether the district court clearly erred in increasing defendant's sentencing level for his role in the offense; and (3) whether the district judge clearly erred in finding that defendant obstructed justice. We affirm.

### Background

A grand jury returned a twenty-four count indictment charging defendant, Robert Voccola, his brother, Edward Voccola, and one of Edward's employees, Roger Cavaca, with an extensive scheme of automobile insurance fraud. Count one of the indictment charged each of the defendants with a federal racketeering violation, 18 U.S.C. § 1962; counts two through twenty-three charged each defendant with federal mail fraud in violation of 18 U.S.C. § 1341, and aiding and abetting mail fraud in violation of 18 U.S.C. § 2; count twenty-four charged co-defendant Edward Voccola with obstruction of justice in violation of 18 U.S.C. § 1503.

Defendant Robert Voccola pled guilty to counts two, four, five, and twenty of the indictment, co-defendant Edward Voccola pled guilty to count one of the indictment, and co-defendant Roger Cavaca pled guilty to counts three, six, seventeen, and nineteen of the indictment.

Further facts bearing on the sentencing issues will be stated when we discuss those issues.

### RECUSAL

#### The Facts

The facts on which the recusal motion was based, although somewhat lengthy and convoluted, are not disputed.

The district judge, Hon. Mary M. Lisi, held a chambers conference prior to the scheduled sentencing hearing. During the

conference, she expressed concern about financial information furnished by defendant for the pre-sentence report. She questioned how the defendant could co-sign a loan for his son when he had listed approximately $100,000 in unpaid debts on his personal financial statement and had submitted affidavits to the court claiming indigency. Defendant's sentencing was, therefore, continued so that additional financial information could be obtained. After the conference, defendant alleges that he realized, for the first time, that the district judge served as a member of a state commission investigating the financial activities of a number of persons and corporations, one of whom was defendant.

Some background facts are now necessary. In 1991 the Rhode Island Depositors Economic Protection Corporation (DEPCO) was created to address the problems arising from a financial crisis in Rhode Island. The crisis was triggered by the failure of numerous banks and credit unions, all of which were insured by a private insurance fund—the Rhode Island Share and Depositors Indemnity Corporation (RISDIC), which also failed. The unpaid debts of defendant listed on the pre-sentence report were owed to DEPCO.

The state commission on which the judge served as an appointee of the governor, before she became a judge, was the Select Commission to Investigate the Failure of RISDIC Insurance Financial Institutions. She took an active role in the commission's investigation of the cause of the failure of the banks, the credit unions, and RISDIC. The commission held hearings, questioned witnesses, and subpoenaed records during the course of its investigation, which lasted nearly two years. In December 1992, the commission issued a report, recommending in effect that DEPCO take appropriate action to resolve the crisis. Legal action to recover loan proceeds was one of the specific recommendations. The commission made its findings and the evidence adduced at the hearings available "to law enforcement agencies, DEPCO and the receivers of RISDIC institutions so that they could pursue criminal and civil action." Report of Select Commission to Investigate Failure of RISDIC, at 2 (1992).

Defendant was not named or identified in any of this material.

On October 3, 1994, Edward D. Pare, receiver for the Rhode Island Central Credit Union, which was insured by RISDIC, sued defendant and his wife for failure to pay a promissory note for $105,000 owed to the credit union. The note was secured by a mortgage on a yacht—the Bella Famina. An *in rem* proceeding against the boat was brought together with an *in personam* action against defendant and his wife. Judge Lisi handled this case. The *in personam* action was terminated by default. Neither defendant nor his wife appeared at any hearing.

Defendant has produced no evidence or made any allegations that the district judge gained any knowledge about defendant personally and/or his financial affairs during the course of her service on the state commission.

After a hearing on the motion to disqualify, the court stated:

Let me deal right now with the Motion to Disqualify.

Mr. Martin, I certainly do not fault you for bringing such a motion. I think it's absolutely within your prerogative and certainly if it is in your client's best interest to do so, that you file such a motion. I think that the impartiality of the Court is the sine qua non of our justice system. It is an issue that I believe I am acutely sensitive of. And so, I have reviewed with great care the motion that you have filed as well as all of the appendices, although I must admit that I did not reread the entire report of the RISDIC Commission which you have appended to your motion.

Let me just say that you are quite correct in asserting that I served as a member of the colloquially-known RISDIC Commission for some two years and that the purpose of that commission was to investigate the reasons for the failure of RISDIC and ultimately the closure of some 45 financial institutions which affected approximately one-third of the population of this state; the effects of which continue to affect the taxpayers of this state.

In any event, as your motion points out, this Defendant was never identified by name anywhere in the reports, public hearings or other materials generated by that commission. And quite frankly, I· never heard your client's name until I came to this Court. And perhaps the first time I ever heard his name was in connection with the other case you cite, which I did preside over, and that is the in rem action against the BELLA FAMINA, which apparently was a motor boat owned by the Defendant and his wife. And I believe that that action likewise was an in personam action against Mr. Voccola and his wife.

As you correctly point out in your memo, that action terminated as to the Defendant and his wife by default. It's my recollection that neither Mr. or Mrs. Voccola answered the Complaint. The hearing that you reference taking place with respect to that action, I can tell you, dealt solely with the claim of the substitute custodian who was looking for more money than the marshal thought he was entitled to. And that the Defendant, nor his wife, nor anyone on their behalf even appeared at any such hearing.

The case law which both Mr. Martin and the Government cite indicates to this Court that any charge of partiality must be supported by a factual basis; that the movant cannot simply rely on conclusory allegations or innuendo. And further, that disqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's partiality. That's the test in the First Circuit on a 455A request.

I have weighed the exhibits and information you've provided in your memo. And I have, in so weighing that evidence, stepped away from the bench and into the shoes of that knowledgeable, objective person in the street. And I come to the conclusion that there is no evidence that would point to a lack of partiality on behalf of this Court.

Instead, my concern is that the motion having been filed this late in the game after that chambers conference wherein I addressed to both you and the Government

my skepticism, if you will, or questions as to the financial information which had been provided—the DEPCO part of it aside—how does one—and I think that this is a plausible question. I don't think that the Sentencing Commission expects judges to review financial information provided to make a determination as to whether or not the Defendant is capable of paying a fine—to simply accept whatever we're handed. I would hope that the Sentencing Commission would expect us to scrutinize that information to make a determination as to the Defendant's ability to pay a fine.

And when I see that the Defendant, in a 1994 tax return, reports zero income, yet is able to sign a loan for his son to buy a $23,000 car, is able to lease a 1995 Lincoln Continental, it does raise a question in my mind as to whether or not the information provided to Probation is correct. And as I said in December, I had those questions, I wanted answers and I wanted to give the Defendant ample opportunity, not only to provide the additional information, but to prepare an explanation since one would be requested.

All of that having been said, I do not believe that you have met your burden under Section 455. And the Motion for Disqualification is denied.

### Discussion

Defendant's recusal motion is based on 28 U.S.C. § 455(a), which states:

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Defendant's claim that the district judge's "impartiality might reasonably be questioned" is based on three sets of facts:

(1) the judge presiding over his criminal case had previously served as a member of an investigative commission, a commission charged with examining improprieties and fraud in financial institutions; (2) the judge, as a member of the commission, recommended criminal and civil prosecutions of individuals who engaged in fraudulent business transactions with these failed institutions; and (3) the defendant had in

42

fact borrowed money from one of the failed institutions and later been sued by the receiver for fraud.

Brief for Appellant at 5–6.

█ The case law fleshes out the barebone words of the statute. At the outset of our case law analysis we note that a guilty plea does not bar a recusal motion. *United States v. Chantal*, 902 F.2d 1018, 1020–21 (1st Cir.1990).

█ The test in this circuit for determining whether a judge's impartiality might reasonably be questioned is long established. The standard stated in *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir.1976), *cert. denied*, 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977), is the one we follow:

[w]hether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

*See also Town of Norfolk v. United States Army Corps of Eng'rs*, 968 F.2d 1438, 1460 (1st Cir.1992); *United States v. Lopez*, 944 F.2d 33, 37 (1st Cir.1991); *United States v. Martorano*, 620 F.2d 912, 919 (1st Cir.), *cert. denied*, 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980).

█ There are two additional considerations in weighing a claim of impartiality. First, there must be a factual basis for the claim that there appears to be a lack of impartiality. *Lopez*, 944 F.2d at 37; *United States v. Giorgi*, 840 F.2d 1022, 1035 (1st Cir.1988). And second, a decision not to recuse is reviewed only for abuse of discretion. *Lopez*, 944 F.2d at 37; *Panzardi–Alvarez v. United States*, 879 F.2d 975, 984 (1st Cir.1989), *cert. denied*, 493 U.S. 1082, 110 S.Ct. 1140, 107 L.Ed.2d 1045 (1990).

█ These are the general rules that apply. There are cases factually analogous to the one at bar. For example, in *United States v. Giorgi*, 840 F.2d at 1035, we held:

Although the knowledge of a defendant gained during a judicial proceeding *may*

present grounds for a reasonable person to question a judge's impartiality, *see Blizard v. Frechette*, 601 F.2d 1217, 1220 (1st Cir. 1979) (citation omitted), mere exposure to prejudicial information does not, in itself, establish the requisite factual basis: "[T]he judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case." *Cowden*, 545 F.2d at 266 (citations omitted). And we have held that unless a party can establish a reasonable factual basis to doubt a judge's impartiality "by some kind of probative evidence," then a judge *must* hear a case as assigned. *Blizard*, 601 F.2d at 1221 (citation omitted).

In *In Re Cooper*, 821 F.2d 833, 844 (1st Cir.1987), we noted: "Judges are not disqualified from trying defendants of whom, through prior judicial proceedings, they have acquired a low view."

We end our case law analysis by quoting from *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In *Liteky*, Justice Scalia, writing for the majority, explicated in detail the history of the recusal doctrine. *Id.* at 543–51, 114 S.Ct. at 1152–55. The question in *Liteky* was whether recusal under 28 U.S.C. § 455(a) was subject to the limitation of the "extrajudicial source" doctrine. The Court held that the doctrine did apply to § 455(a). *Id.* at 554, 114 S.Ct. at 1157. In the course of the opinion the Court stated:

Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

*Id.* at 551, 114 S.Ct. at 1155.

As to defendant's contention that Judge Lisi's prior participation on the investigative commission requires recusal, we find the connection between such participation and defendant's criminal case to be too attenuated to create a reasonable doubt concerning the

judge's impartiality in the mind of the reasonable man. The commission did not focus on this particular case or on this particular defendant. *Cf. United States v. Payne*, 944 F.2d 1458 (9th Cir.1991) (finding that judge's prior service on pornography commission did not require recusal from child molestation case).

Applying the legal principles to the facts asserted as a basis for recusal, it is obvious to us that Judge Lisi quite properly denied the motion for her recusal.

## THE SENTENCING APPEALS

■ We turn now to defendant's challenges to the district court's upward adjustments under the Federal Sentencing Guidelines for (i) his role in the offense and (ii) obstruction of justice. First, we provide a brief statement of the law relevant to appellate review of district court determinations to make upward adjustments under the Guidelines. "When we review a district court's application of a sentencing guideline, we utilize a bifurcated process. First we review the guideline's legal meaning and scope *de novo*. Next, we review the court's fact-finding for clear error, giving due deference to the court's application of the guidelines to the facts." *United States v. Mitchell*, 85 F.3d 800, 813 (1st Cir.1996) (quoting *United States v. Thompson*, 32 F.3d 1, 4 (1st Cir. 1994)). *Cf. Koon v. United States*, — U.S. —, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (*departures* from the Guidelines reviewed under abuse of discretion standard, *id.*, at —, 116 S.Ct. at 2043, which includes review "to determine that the discretion was not guided by erroneous legal conclusions." *Id.* at —, 116 S.Ct. at 2048 (emphasis added)).

■ We consider the facts as they are set forth in the unobjected-to portions of the Presentence Report ("PSR") and the sentencing hearing transcript. *See United States v. Cali*, 87 F.3d 571, 573 (1st Cir.1996); *United States v. Grandmaison*, 77 F.3d 555, 557 (1st Cir.1996).

### *Role in the Offense*

■ At sentencing, the district court applied a three-level enhancement to defendant's sentence based upon a finding that defendant was a "manager or supervisor" of an extensive scheme under the United States Sentencing Guidelines ("U.S.S.G."), § 3B1.1. Because the details of the insurance fraud scheme are important to the determination of defendant's "manager or supervisor" status, we rehearse the relevant facts. Throughout the course of the automobile-insurance fraud scheme, defendant owned and ran Allandale Auto Body in Providence, Rhode Island. His brother and co-defendant ran another auto body shop in the same city. Although there were occasional variations, each false insurance claim generally followed the same pattern. First, an individual would purchase Massachusetts or Rhode Island vehicle insurance with liability coverage only. Usually only the first payment was made on the automobile insurance. Prior to the second payment coming due, an "accident" would take place. The "accident" always occurred between the insured vehicle and another vehicle that was either already, or soon came to be, in the possession of one of the defendants' auto body shops. After these staged accidents, the defendants would file insurance claims under the insurance policies in order to "repair" the "hit" car. The two body shops used the same damaged cars to show to different insurance appraisers as the car "hit" by the insured vehicle. In all, there were at least six individuals involved in the fraud: defendant and his brother, Edward, his brother's employee, Mr. Cavaca, his employee, Mr. Christopher, defendant's sister-in-law, Ms. Ng, and a Mr. Hubert.

As detailed in the PSR, defendant admitted to at least one instance in which he directed the actions of another in furtherance of the fraud. In his own version of the events relating to a fraud in which his sister-in-law was involved, he states that, "I told her what she should do; I told her to bring her car to my shop and to tell her insurance company that she had hit a parked car. I also told her to tell her insurance company that the car she had hit was at [my brother's auto body shop]."

In deciding to apply the three-level enhancement for managerial status, the district judge stated, "I think that what is most

telling in this case are the Defendant's own words ... where the Defendant himself describes his directions to M̀s. Ng." The court expressly found that "beyond being a willing participant, he directed the transactions which make up the underlying schemes to defraud the various victims in this case."

### Discussion

Utilizing the bifurcated review process, *see Mitchell*, 85 F.3d at 813, we first examine the legal meaning and scope of the Guideline applied by the district court. Sentencing Guideline § 3B1.1 mandates a three-level increase if "the defendant was a manager or supervisor ... and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1. The plain language of the Guidelines requires that a two-step process be employed when determining the applicability of this enhancement. First, the criminal scheme must be found to have five or more participants or be "otherwise extensive." *Id.* Second, the defendant must be found to have managed or supervised the scheme. *See United States v. Joyce*, 70 F.3d 679, 682 (1st Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1556, 134 L.Ed.2d 657 (1996).

As an initial matter, we note that the first requirement under this Guideline has been met. The PSR conclusively shows that there were six participants in the scheme.[1] Defendant does not challenge the district court's determination on this issue. The crux of defendant's contention lies in the district court's finding that defendant was a manager or supervisor of the illegal scheme.

■ The legal meaning and scope of the "manager or supervisor" role under the Guidelines has been given considerable attention by this court in recent years. *See, Cali*, 87 F.3d at 576–79. Our decisions are consistent: "we have required 'some degree of control or organizational authority over others' to support a section 3B1.1(b) adjustment." *Id.* at 578 (citation omitted). Therefore, "[m]anagerial status ... attach[es] if there is evidence that a defendant, in committing the crime, exercised control over, or

was otherwise responsible for overseeing the activities of, at least one other person." *United States v. Savoie*, 985 F.2d 612, 616 (1st Cir.1993).

The district court was correct in relying on evidence of direction and control over others when making its decision to apply the § 3B1.1(b) enhancement. There was, therefore, no mistake of law in the court's determination of the scope and legal meaning of § 3B1.1(b).

■ We turn now to the district court's fact-finding on the issue. Because "[t]he determination of the defendant's role in an offense is fact-specific," *Joyce*, 70 F.3d at 682, we remain "deferential to the sentencing court's views and review the determinations made only for clear error." *Id.* Examining the facts as set out in the PSR, which detail at least one instance in which the defendant expressly admits to managing the actions of another in furtherance of the fraud, we can find no basis for assigning error, clear or otherwise, to the district court's determination. As the district court pointed out, by admitting to directing Ms. Ng on the finer points of the fraudulent activity, defendant in effect acknowledged that he managed the activities of "at least one other person" in the course of the illegal activity. *Savoie*, 985 F.2d at 616.

■ The government "need only prove by a preponderance of evidence that an upward adjustment was warranted," *Joyce*, 70 F.3d at 682 (citation omitted), and when making determinations regarding a defendant's role in the offense, "the sentencing court may look beyond the count of conviction to the whole of the defendant's pertinent conduct." *Id.* We find ample support for the district court's decision to apply the three-level enhancement. We note that additional evidence of managerial status, above and beyond that which the district court expressly relied on at sentencing, can be found in the PSR to support a § 3B1.1(b) enhancement. These facts include an admission that he engineered a fraudulent claim

---

1. A participant is a person who "is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment n. 1.

for Mr. Christopher, as well as the fact that defendant owned one of the body shops involved in such a sophisticated scheme of insurance fraud. Evidence relating to a defendant's role in the offense may be probative "by fair inference." *United States v. Tejada–Beltran,* 50 F.3d 105, 113 (1st. Cir.1995). It would therefore be reasonable for the district court to have inferred, from defendant's ownership of one of the loci of the criminal activity, a certain degree of managerial control. It is apparent, therefore, that enhancement by three levels under § 3B1.1(b) was proper.

### Obstruction of Justice

█ The final matter in this appeal concerns defendant's challenge to the district court's two-level upward enhancement under § 3C1.1 of the Guidelines for obstruction of justice. Under the Guidelines, the sentence is enhanced by two levels where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution or sentencing of the instant offence." U.S.S.G. § 3C1.1.

The facts leading the court to apply the adjustment were presented at the sentencing hearing through the testimony of Maureen Ng, the defendant's sister-in-law and an unindicted co-conspirator in the insurance fraud. Ms. Ng testified that when she was first contacted by a Postal Inspector, defendant advised her "not to speak to him and not to come to Rhode Island." She also testified to the effect that defendant advised her not to answer the door when investigators were trying to serve a subpoena, and throughout the investigation defendant advised her "not to talk to anyone." Finally, she testified that defendant attempted to convince her to leave the jurisdiction, and "go down to Florida", in order to avoid the investigation.

At sentencing, the district court found as follows:

> Based on the testimony of Ms. Ng, which I find to be credible, I find that this defendant did engage in conduct obstructing or impeding the administration of justice by counselling and directly advising Ms. Ng to avoid grand jury subpoenas, which were being served in connection with the Government's investigation of the insurance fraud scheme to which this defendant has entered a plea of guilty; that Ms. Ng's acquiescence and the Defendant telling her to avoid the subpoenas, hindered the Government's investigation for a period of time while she, herself, admits to hiding her car and not going in her house and essentially avoiding service of the subpoena as she was directed to do by this Defendant.

Tr. at 71. Defendant challenges this finding, basing his appeal on (i) the lack of evidence of any threat against the witness, and (ii) the court's failure to take into account additional testimony by Ms. Ng which, in defendant's view, would counsel against a § 3C1.1 enhancement.

### Discussion

Little needs to be said regarding the legal meaning of § 3C1.1. The language of the Guideline is clear enough; it applies where the defendant intentionally impedes, or attempts to impede, the investigation of an offense. Culpability under the Guideline is also applicable where a defendant causes, or attempts to cause, the obstruction of justice by a third party. The Application Notes state that "[u]nder this section, the defendant is accountable for his own conduct and for conduct that he ... counselled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.1, note 7. Clearly, conduct such as that described by Ms. Ng falls within the scope of the Guideline. The only remaining basis for reversal, therefore, is if it was error for the district court to rely on Ms. Ng's testimony.

█ "Any credibility assessment made at sentencing falls within the province of the district court, and it should be respected on appeal unless it is clearly erroneous." *Joyce,* 70 F.3d at 682 (citation omitted); *see United States v. Indelicato,* 97 F.3d 627, 631–32 (1st Cir.1996). We find no error in the district court's factual determination that defendant obstructed justice. The evidence presented by Ms. Ng wholly supports the district court's determination that defendant obstructed justice, and there is nothing in the

record to suggest that the district court was somehow in error in relying on the testimony of Ms. Ng.

■ We turn briefly to defendant's specific assignments of error. First, contrary to what defendant argues, § 3C1.1 does not require the existence of threats in order to apply. A court may find that defendant "obstructed or impeded" an investigation, without resorting to threats to obtain a witness's cooperation. The Application Notes are plain that a wide range of conduct will suffice to properly enhance a sentence for obstruction of justice. U.S.S.G. § 3C1.1, note 3a.

■ Second, defendant argues that the district court erroneously ignored testimony suggesting that he was not instructing Ms. Ng to obstruct the investigation or to avoid the service of a subpoena, but rather, merely advising her of her right to preserve her Fifth Amendment right against self-incrimination. But the obstruction of justice adjustment is supported by actions of the defendant irrespective of any advice about rights under the Fifth Amendment. Defendant advised Ms. Ng not to answer the door for the investigator trying to serve the subpoena and to go to Florida in order to avoid the investigation. Because "[t]he facts constituting obstruction of justice for sentencing purposes need only be established by a preponderance of the evidence," *United States v. Thomas,* 86 F.3d 263 (1st Cir.1996) (citation omitted), defendant's challenge to the enhancement fails.

*Affirmed.*