# United States Court of Appeals
## For the First Circuit

No. 13-2504

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHANIE L. McCORMICK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Joseph M. Bethony and Gross, Minsky & Mogul, P.A. on brief for appellant.

Thomas E. Delahanty II, United States Attorney, and Renée M. Bunker, Assistant United States Attorney, on brief for appellee.

December 10, 2014

**SELYA, Circuit Judge.** This is a single-issue sentencing appeal in which the defendant challenges only the district court's enhancement of her guideline sentencing range (GSR) through a two-level role-in-the-offense adjustment for leading, organizing, managing, or supervising a criminal activity. See USSG §3B1.1(c). Discerning no clear error in the district court's essentially factual determination, we summarily affirm the defendant's sentence.

The silhouette of the case is easily sketched. In January of 2013, defendant-appellant Stephanie L. McCormick and her cousin, Anthony Post, began partying with drugs. Oxycodone was their drug of choice, and when their supply ran out, the pair, after considering other alternatives, decided to rob a local pharmacy. A vehicle was needed and the defendant recruited an acquaintance, Candice Eaton, to drive them in her car.

The record is tenebrous as to what Eaton knew and when she knew it. According to the defendant, Eaton thought (when she agreed to help) that Post and the defendant were going to "rip someone off" to get drugs, not that they were going to rob a pharmacy.

On January 22, Eaton, accompanied by a minor identified as "C.P.," drove Post and the defendant to a CVS pharmacy in Augusta, Maine. While the others waited in the car, Post walked into the store and presented a note to staff members. The note

-2-

commanded them to "put [a]ll oxycodone in a bag" and threatened that he would "start shooting" otherwise. The pharmacy workers complied, filling a bag with bottles containing several hundred pills. When Post returned, the defendant — in full view of Eaton and C.P. — began emptying the contents of the purloined bottles of prescription drugs into the CVS bag. Eaton, following commands from the defendant, drove the car to her own apartment, stopping once en route so that an errand demanded by the defendant could be performed and once again so that the occupants of the car could "get high." When the contraband was divvied up, Eaton received a share.

The culprits were quickly brought to book. On March 21, 2013, the defendant waived indictment and entered a guilty plea to an information charging her with Hobbs Act robbery (specifically, that she aided and abetted the taking of controlled substances from the pharmacy through the use of threatened violence) in violation of 18 U.S.C. §§ 2, 1951.

The preparation of the presentence investigation report generated some controversy. The parties' dispute centered on the dimensions of the appropriate GSR. Everyone agreed to most of the components: a base offense level of 20, see USSG §2B3.1(a); a two-level enhancement for a threat of death made during the robbery, see id. §2B3.1(b)(2)(F); a one-level enhancement because a controlled substance was involved, see id. §2B3.1(b)(6); a three-

level downward adjustment for acceptance of responsibility, see id. §3E1.1; and a criminal history category of I. The consensus stopped there; the parties wrangled about the appropriateness vel non of a two-level role-in-the-offense enhancement under USSG §3B1.1(c).

The presence or absence of this role-in-the-offense enhancement made a significant difference in the dimensions of the defendant's GSR. Without this enhancement, the GSR would be 33 to 41 months. With it, the GSR would be 41 to 51 months.

The district court proceeded to hold a hearing to resolve this contretemps. It subsequently issued a sentencing order finding the section 3B1.1(c) enhancement warranted. See United States v. McCormick, No. 13-51, 2013 WL 6062104, at *1 (D. Me. Nov. 18, 2013). The court's rescript was thorough and detailed: it found, inter alia, that the defendant had organized the criminal enterprise, controlled Post's activities, recruited both Eaton and C.P., and occupied a leadership role vis-à-vis Eaton. See id. at *19-20.

On December 3, 2013, the district court convened the disposition hearing. In line with its earlier findings, the court set the defendant's GSR at 41 to 51 months. After hearing from the attorneys and the defendant, the court sentenced the defendant to a 46-month term of immurement. This timely appeal ensued.

Our analysis begins with familiar lore.  The government has the burden of proving the propriety of an upward role-in-the-offense adjustment.  See United States v. Tejada-Beltran, 50 F.3d 105, 113 (1st Cir. 1995).  It must carry this burden by a preponderance of the evidence.  See id.  This court, in turn, reviews the district court's underlying factual findings for clear error and that court's resolution of legal questions (including its interpretation and application of the sentencing guidelines) de novo.  See United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011).  Where the raw facts are susceptible to competing inferences, the sentencing court's choice between those inferences cannot be clearly erroneous.  See United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990).

The guideline provision that lies at the heart of this appeal, USSG §3B1.1(c), states that "if the defendant was an organizer, leader, manager, or supervisor in any criminal activity," her offense level should (with exceptions not relevant here) be increased by two levels.  Such an increase is warranted only if the government proves that "(1) the criminal enterprise involved at least two complicit participants (of whom the defendant may be counted as one), and (2) the defendant, in committing the offense, exercised control over, organized, or was otherwise responsible for superintending the activities of, at least one of those other persons."  United States v. Cruz, 120 F.3d 1, 3 (1st

Cir. 1997) (en banc). Applying this paradigm, the district court found that the defendant's relationships with both Eaton and Post were independently sufficient to ground the section 3B1.1(c) enhancement. See McCormick, 2013 WL 6062104, at *20. For simplicity's sake, we focus on the district court's assessment of the defendant's relationship with Eaton. As we explain below, this assessment was unimpugnable.

The defendant admits — as she must — that the hatched scheme for the pharmacy robbery involved at least two participants. She claims, however, that Eaton was not a culpable participant and that, in all events, she did not superintend Eaton's activities. The record belies this two-pronged claim.

Eaton's activities can be viewed in two discrete segments. First, she was involved prior to the actual holdup; that is, she furnished the vehicle and drove Post and the defendant to the scene of the crime. Second, she was involved subsequent to the actual holdup; that is, she drove the getaway car and split the spoils with the main protagonists. While either set of activities would likely have supported a finding of complicity in the crime, see, e.g., United States v. Sanchez, 354 F.3d 70, 74 (1st Cir. 2004); United States v. Neal, 36 F.3d 1190, 1211 & n.19 (1st Cir. 1994), the enhancement can readily be justified on the second set of activities alone.

The court found that Eaton learned of the pharmacy robbery, at the latest, when Post ran from the store and returned to the car, at which time the defendant began dumping the contents of stolen bottles of prescription drugs into a CVS bag. From at least that point forward, it is crystal clear that Eaton was a knowing and willing participant in the heist: she drove the getaway car and pocketed a share of the drugs. Based on these events, the district court concluded that Eaton was an accessory after the fact to the robbery.

This conclusion is fully supportable[1] — and it lays an adequate foundation for the section 3B1.1(c) enhancement. A party who knowingly assists in a criminal enterprise is responsible as an accessory. See United States v. Hall, 101 F.3d 1174, 1178 (7th Cir. 1996); United States v. Lewis, 68 F.3d 987, 990 (6th Cir. 1995). We hold, as a matter of first impression in this Circuit, that such a level of engagement is sufficient to qualify the accessory as a "participant" in a criminal activity for purposes of an upward role-in-the-offense adjustment under section 3B1.1. See United States v. Bennett, 143 F. App'x 200, 204 (11th Cir. 2005); Hall, 101 F.3d at 1178; United States v. Boutte, 13 F.3d 855, 860 (5th Cir. 1994).

---

[1] Indeed, Eaton pleaded guilty to an accessory after the fact charge and was sentenced accordingly.

In an effort to dodge this bullet, the defendant argues that there is no respectable footing in the record for a finding that she "led" Eaton. This is magical thinking. The record reflects with conspicuous clarity that Eaton — who had been recruited by the defendant in the first place — took directions from the defendant, drove where she was told to drive, and allowed the defendant to use her (Eaton's) apartment as a safe house for dividing the stolen pills. Last — but not least — Eaton followed the defendant's lead as to how the pills were to be split, in effect letting the defendant dictate her (Eaton's) share of the spoils.

We need go no further. The record is replete with circumstantial evidence adequate to support a finding that, both before and after the pharmacy robbery, the defendant was in control of the entire operation. Eaton's culpable participation, under the defendant's hegemony, was more than enough to warrant the district court's imposition of a two-level role-in-the-offense enhancement.

**Affirmed.** <u>See</u> 1st Cir. R. 27.0(c).