# United States Court of Appeals
## For the First Circuit

No. 20-1265

UNITED STATES OF AMERICA,

Appellee,

v.

RASHAAD MCKINNEY, a/k/a Dawson, a/k/a D,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, U.S. District Judge]

Before

Howard, Chief Judge,
Selya, Circuit Judge,
and Gelpí,* District Judge.

Harris A. Mattson for appellant.
Jeanne D. Semivan, Special Assistant United States Attorney,
with whom Halsey B. Frank, United States Attorney, was on brief,
for appellee.

July 19, 2021

---

* Of the District of Puerto Rico, sitting by designation.

**GELPÍ**, **District Judge**. Rashaad McKinney ("McKinney") entered a guilty plea to drug and firearm conspiracy counts. In this appeal, he challenges the district court's application of a three-level enhancement to his guideline sentencing range for his role in the offense as a manager or supervisor, pursuant to U.S.S.G. §3B1.1(b). McKinney's principal argument is that the district court erred in finding that he exercised authority or control over other participants so as to invoke the enhancement.

I.    Background[1]

In 2017, the Bureau of Alcohol, Tobacco, Firearms and Explosives in conjunction with the Drug Enforcement Administration and Maine Drug Enforcement Agency investigated a drug conspiracy extending throughout central Maine. The members of the drug trafficking organization ("DTO"), transported heroin and cocaine from Rochester, New York, and distributed the same principally in the Augusta, Maine area. The leaders of the DTO, Quinton Spinks and Deondray Warren, would transport the drugs from Rochester. Once in Maine, Spinks or Warren provided them on consignment to the other members of the DTO, including McKinney, for distribution and return of proceeds.

McKinney and other members of the DTO availed themselves

_____

[1] The facts that follow are taken from the record, particularly the indictment, plea agreement, presentence report, and sentencing hearing transcript. See United States v. Santa-Soler, 985 F.3d 93, 95 (1st Cir. 2021).

of local individuals to drive them around Central Maine to deliver crack and heroin to their customers. Four grand jury sources of information acted as drivers for McKinney and often the drug transactions occurred within the vehicles. These persons, in turn, would be paid in cash or drugs for personal use.

McKinney and other members of the DTO obtained firearms illegally via straw purchasers who made false statements and representations to federal firearms licensees in Kennebec County, Maine. McKinney would also compensate the straw purchasers who acted as drivers with currency and narcotics for personal use. Moreover, McKinney sent several of these firearms to DTO members in Rochester.

On July 14, 2018, McKinney was indicted on multiple drug and firearm counts.[2] He pleaded guilty to count one of the Indictment for conspiring to distribute and possess with intent to distribute heroin and cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841 (b)(1)(C) as well as count seven of the Indictment for conspiring to violate several federal firearms laws, to wit, 18 U.S.C. §§ 371, 922(a)(5), 922(a)(6) and 924(a)(1)(A).

At the sentencing hearing, the district court relied heavily on the grand jury testimony of individuals involved in the

[2] Spinks and Warren, among other co-conspirators were also charged in the indictment.

conspiracy, including drivers and straw purchasers. Over McKinney's objection, the district court found that he qualified for a three-level enhancement for being a manager or supervisor of the drug and firearm conspiracies, pursuant to U.S.S.G. §3B1.1(b). Subsequently, the district court calculated an advisory guideline range of 110 to 137 months and proceeded to sentence McKinney to a downwardly variant sentence of 77 months of imprisonment as to count one of the Indictment, and 60 months as to count seven, to be served concurrently, followed by a three-year term of supervised release.

## II. Standard of Review

Appellate review of sentencing error claims involves a two-step pavane. See United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). "We first examine any claims of procedural error. If the sentence clears these procedural hurdles, we then consider any claim that questions its substantive reasonableness." United States v. Ilarraza, 963 F.3d 1, 7 (1st Cir. 2020)(internal citations omitted). Because the appellant solely advances an argument of procedural error, we do not address the substantive reasonableness of his sentence, which ultimately fell significantly below the applicable guideline range.

The government has the burden of proving the propriety of an upward role-in-the-offense adjustment. See United States v. Tejada–Beltrán, 50 F.3d 105, 113 (1st Cir. 1995). It must meet

- 4 -

this burden by a preponderance of the evidence.  United States v. McCormick, 773 F.3d 357, 359 (1st Cir. 2014). On appeal, we review the district court's underlying factual findings for clear error and legal questions (including the interpretation and application of the sentencing guidelines) de novo.  Id. at 359 (citing United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011)).  "Where the raw facts are susceptible to competing inferences, the sentencing court's choice between those inferences cannot be clearly erroneous."  Id. at 359 (citing United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990)).

## III. Discussion

McKinney claims that the district court erred in concluding that he was a manager or supervisor of the drug conspiracy because he directed people to buy firearms and told them where to drive.  In other words, the district court's determination that he was a manager or supervisor was based entirely on a finding that he requested and received specific services from others in exchange for compensation.  McKinney posits that the district court's finding that he exercised authority or control over local members of the conspiracy was premised on a misinterpretation of U.S.S.G. §3B1.1(b). Specifically, McKinney argues that the district court failed to distinguish between offering payment for the performance of a specific task on the one hand, and on the other hand, demanding

compliance on the basis of an established role within the overall conspiracy. In other words, in his view, there must exist a relationship of coercion or authority under which he can demand compliance. This error, McKinney contends, extended the meaning of "directed action" beyond its intended place within the concept of a "chain of command."

Under §3B1.1(b) a defendant's offense level is increased by three levels if "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." The plain language of the Guidelines requires that a two-step process be employed when determining the applicability of this enhancement: (1) scope-that criminal activity involved five or more participants or was otherwise extensive, (2) status- that the defendant was a manager or supervisor (but not an organizer or leader). See United States v. Voccola, 99 F.3d 37, 44 (1st Cir. 1996).

McKinney does not dispute that the criminal conspiracies in which he participated involved more than five criminal actors, therefore, the scope element is met.[3] The crux of McKinney's

---

[3] At the sentencing hearing, the district court stated:

> I should first note that there's no dispute here that the conspiracy involved five or more participants or was otherwise extensive. I have already sentenced more than five individuals for their respective roles in the conspiracy and the sole issue is the

- 6 -

contention lies in the district court's finding that defendant was a manager or supervisor within the illegal scheme.

"We review a district court's fact-bound determination of a defendant's role in the offense for clear error." Id. "The determination of an individual's role in committing an offense is necessarily fact-specific. Accordingly, appellate review must be conducted with considerable deference." United States v. Soto-Peguero, 978 F.3d 13, 23 (1st Cir. 2020), cert. denied, 141 S. Ct. 1430 (2021)(quoting United States v. Cruz, 120 F.3d 1, 3 (1st Cir. 1997)). A single instance of managing the actions of others can substantiate the enhancement. See Voccola, 99 F.3d at 44.

Manager/Supervisor Role Enhancement

Although the guidelines do not define the term "supervisor" or "manager," "we have held that '[e]vidence of the defendant's role in the conspiracy 'may be wholly circumstantial,' and need only show that he exercised authority or control over another participant on one occasion.'" United States v. Cortés-Cabán, 691 F.3d 1, 28 (1st Cir. 2012) (quoting United States v. Flores-de-Jesús, 569 F.3d 8, 34 (1st Cir. 2009)); see also Cruz, 120 F.3d at 3 (noting that the analogous enhancement based on "organizer, leader, manager, or supervisor" status in U.S.S.G. §3B1.1(c) applies if "the defendant, in committing the offense,

_____

defendant's actual role and whether he was a manager or a supervisor.

- 7 -

exercised control over, organized, or was otherwise responsible for superintending the activities of, at least one of those other persons").

With respect to exhibiting control as a manager or supervisor, the defendant's conduct must satisfy two conditions. First, "for the enhancement to apply, it is not enough to show that 'the defendant merely controlled, organized, or managed criminal activities; rather, he must instead control, organize, or manage criminal actors.'" Cortés-Cabán, 691 F.3d at 29 (quoting Flores-de-Jesús, 569 F.3d at 34); see United States v. García-Sierra, 994 F.3d17, 37 (1st Cir. 2021)(quoting United States v. Goldberg, 105 f.3d 770, 777 (1st Cir. 1997)) ("A supervisory or managerial role is evidenced by some manifestation of authority on the part of the defendant. The authority possessed by the defendant may be fairly minimal; "defendant need not" be at the top of a criminal scheme to be a "manager or supervisor.")

Second, our case law is clear —— contrary to McKinney's assertions —— that a defendant need not possess a formal, coercive and hierarchal relationship with a subordinate in order to qualify for the enhancement. The key inquiry is whether the defendant "exercised control over, managed, organized, or superintended the activities" of another criminal actor." Ilarraza, 963 F.3d at 13; see United States v. García-Sierra, 994 F.3d 17, 37 (1st Cir. 2021) (For the enhancement to apply, the defendant needs only to

"exercise[] some degree of authority or control" over another actor). Likewise, that "minimal" authority, García-Sierra, 994 F.3d at 37, may be exercised on "one occasion," id. (quoting United States v. Savarese, 686 F.3d 1, 20 (1st Cir. 2012)). This is a relatively low bar, and the fact that control may be exhibited on a single occasion reinforces the notion that a formal chain of command is not necessary for the enhancement to apply. The record must evince that, "in committing the offense, the defendant exercised control over, managed, organized, or superintended the activities of at least one other participant." Ilarraza, 963 F.3d at 13 (quoting United States v. Al-Rikabi, 606 F.3d 11, 14 (1st Cir. 2010)).

At sentencing, the district court based its finding that the §3B1.1(b) enhancement applied to McKinney after addressing the record evidence in a painstakingly detailed fashion. In terms of recruitment of associates, nature and scope of McKinney's illegal activity, and authority over others, the district court described the same as follows:

> [T]he record reflects that the defendant did, in fact, recruit addicts to drive for him, to house him, and actually to buy firearms for the conspiracy. The right to a larger share of the proceeds is not a matter of record. His participation in planning or organization is not a matter of record.
>
> The nature and scope of the illegal activity included a fairly extensive drug distribution and firearms conspiracy in central Maine.

> There were substantial amounts of heroin and crack cocaine that were distributed by virtue of the conspiracy.
>
> Turning to the firearms conspiracy, at least 12 firearms were illegally obtained. As part of the conspiracy, the defendant himself was involved in both aspects of the conspiracy.
>
> The defendant was involved for nearly one year. The defendant himself was a resident of Maine at the time and a former resident of Rochester, and he was a link between the Rochester and Maine communities. Turning to his authority over others. There's evidence that the defendant hired other individuals to drive for him extensively. In fact, one person mentions that he was the defendant's chauffeur and that he directed the gun sales.

The district court further specifically highlighted instances in which McKinney exercised control over four individuals who, under his direction, drove him while he engaged in illicit activity. They also purchased or obtained firearms for him, as well as sold drugs. The district court also pointed to additional facts that, we conclude, adequately support its finding that McKinney exhibited control over other criminal actors sufficient to trigger the enhancement. See Ilarraza, 963 F.3d at 13. To begin, McKinney played an important role in recruiting individuals for the conspiracy and compensating them in cash or drugs. He instructed various individuals to drive him to precise locations - multiple times per day - in order to complete illicit drug transactions. Likewise, McKinney gave detailed instructions to the straw purchasers of firearms, including which firearms to

purchase and what to exactly write on disclosure forms. Taken together, we think it indisputable that McKinney's role constitutes enough management and coordination of others necessary to trigger the enhancement. See Cortés-Cabán, 691 F.3d at 29. To cinch the matter, McKinney sent some of the firearms obtained through straw purchasers back to his superiors across state lines. This fact underscores McKinney's own managerial role; it demonstrates the extent to which he coordinated his subordinates and their actions for the benefit of the conspiracies. See García-Sierra, 994 F.3d at 37.

## IV. Conclusion

In light of the overwhelming evidence meticulously alluded to by the district court, we conclude that it did not err in finding that McKinney exercised authority or control over criminal actors and thus correctly applied the §3B1.1(b) enhancement. Accordingly, the sentence and judgment of the district court are **AFFIRMED.**