# United States Court of Appeals
## For the First Circuit

No. 21-1737

UNITED STATES OF AMERICA,

Appellee,

v.

BERNARDO COPLIN-BENJAMIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Kayatta, Howard, and Thompson,
Circuit Judges.

Luis Rafael Rivera for appellant.
Maarja T. Luhtaru, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, and Julia M. Meconiates, Assistant United States Attorney, were on brief, for appellee.

August 21, 2023

**HOWARD**, **Circuit Judge**.   On August 8, 2019, Bernardo Coplin-Benjamin pleaded guilty to (1) conspiracy to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 846 and (2) conspiracy to import a controlled substance into the United States in violation of 21 U.S.C. § 963.   The district court sentenced him to 262 months' imprisonment.   On appeal, Coplin challenges both the procedural and substantive reasonableness of his sentence.   For the following reasons, we affirm.

## I.

Because this appeal follows a straight guilty plea without a plea agreement, we glean the relevant facts from the unchallenged portions of the presentence investigation report (PSR) and the sentencing hearing.   See United States v. Rivera-González, 776 F.3d 45, 47 (1st Cir. 2015); United States v. Dávila-González, 595 F.3d 42, 45 (1st Cir. 2010).

On January 27, 2018, federal agents intercepted a vessel named the "Black Wolfpack" that was suspected of transporting drugs from St. Thomas, United States Virgin Islands, to Fajardo, Puerto Rico.   The individuals on the vessel at the time were identified as Maximiliano Figaro-Benjamín, Emiliano Figaro-Benjamín, Katerín Martínez-Alberto, and Alexandria Andino-Rodríguez.

During multiple searches of the Black Wolfpack, agents found approximately 132 kilograms of cocaine (worth about three

- 2 -

million dollars) hidden in bundles in multiple locations on the vessel. Agents also found a WhatsApp chat on Maximiliano Figaro-Benjamín's phone between him and Coplin discussing the drug trafficking venture. The messages showed them discussing the distribution of 130 kilograms of cocaine as well as details like the number of packages, cost per package, estimated departure date, and a meeting in St. Thomas. The messages showed that Coplin had spoken directly to the narcotics supplier in St. Thomas to discuss the price per kilogram of cocaine transported. Additional discovery showed that Coplin was in regular communication with the key individuals from the January 27, 2018, seizure throughout the duration of the vessel's trip and thereafter.

Coplin was arrested on February 22, 2019. On August 8, 2019, he entered a straight guilty plea for conspiracy to possess with the intent to distribute a controlled substance and conspiracy to import a controlled substance.

Several of Coplin's co-defendants opted to proceed to trial. The testimony at trial revealed details about the drug trafficking conspiracy and the acts preceding the St. Thomas-Puerto Rico trip in which the Black Wolfpack was seized. A co-defendant named Javier Resto-Miranda testified that he would buy drugs from Coplin to sell in Alaska and that, during the course of these dealings, "the idea came up of purchasing a vessel to buy drugs in St. Thomas and bring them to Puerto Rico." Resto

indicated that Coplin had had the idea and asked to put the vessel in Resto's name. The vessel was purchased but ultimately seized. However, Coplin had another vessel, named Wasikoki. Coplin again talked about the possibility of trafficking drugs from St. Thomas to Puerto Rico, this time with the Wasikoki. Resto testified that Coplin "asked [him] to get somebody who could take [them] to St. Thomas so [they] could learn about the route, how much gas would be needed, how much fuel, how much time." He said they arrived in St. Thomas and Coplin asked Resto to propose to the captain doing a test run with two kilograms of cocaine. On one trip, Resto called Coplin for guidance on how to proceed when a boat didn't work properly, and Coplin advised him to wait and check later.

Coplin later gave Resto $30,000 to purchase the Black Wolfpack vessel. Resto testified that before every trip, Coplin would plan, would meet with the members of the conspiracy, and would tell Resto "what had to be done." He testified that Coplin was the one to pay the other co-defendants and that he gave them money for gas, food, and supplies for the trip. Resto also testified that Coplin and his business partner would count the money at Coplin's home.

Based on this testimony and the other facts outlined in the PSR, the probation officer classified Coplin as a leader of a criminal activity involving five or more participants and therefore added a four-level enhancement. Coupled with a base

level offense of 36 and multiple other calculations not relevant on appeal, the total offense level was 39. The recommended guideline range was 262 to 327 months' imprisonment.

Coplin filed a written objection to the PSR, arguing "that he does not deserve to be labeled as a leader in this case as he was not in charge of the overall operation and was not putting his own money to develop . . . the drug venture." He did not challenge the underlying factual allegations and testimony. He also argued at his sentencing hearing that he should receive a downward adjustment for cooperating with the government and that the government's proposed sentence for Coplin was disproportionate to those of coconspirators, among other arguments not relevant on appeal. The district court denied Coplin's objections, found that he was a leader and not a supervisor, and did not give him credit for cooperation with the government. The court sentenced Coplin to 262 months' imprisonment.

## II.

The key arguments Coplin advances on appeal are (1) that he was a "supervisor" and not a "leader," so the district court should not have applied the four-level leadership enhancement; (2) that the court failed to consider factors set out in 18 U.S.C. § 3553 regarding his cooperation with the government; and (3) that

his sentence was substantively unreasonable given that he received a much longer sentence than several co-defendants.[1]

We review claims of sentencing errors in two steps: "We first examine any claims of procedural error.  If the sentence clears these procedural hurdles, we then consider any claim that questions its substantive reasonableness."  United States v. McKinney, 5 F.4th 104, 107 (1st Cir. 2021) (quoting United States v. Ilarraza, 963 F.3d 1, 7 (1st Cir. 2020)).  The first two arguments Coplin advances are claims of procedural error, see United States v. Laureano-Pérez, 797 F.3d 45, 80 (1st Cir. 2015), so we begin there, taking each in turn.

**A.**

---

[1] During oral argument, Coplin's counsel also advanced an argument (not included in his briefing on appeal) that the base offense level of 36 was incorrect because it was based on the offense involving at least 150 but less than 450 kilograms of cocaine, whereas agents only seized 132 kilograms on the Black Wolfpack.  Counsel suggested that this discrepancy was "overlooked" by everyone and asked for review for clear error based on a miscarriage of justice even though arguments raised for the first time at oral argument are considered waived.  See, e.g., United States v. Leoner-Aguirre, 939 F.3d 310, 319 (1st Cir. 2019).  However, the circumstances here contradict counsel's argument.  The district court transcript makes clear that defense counsel, the prosecutor, and the district judge all discussed this issue at the sentencing hearing.  The government's position at sentencing was that there was evidence of other trips in the drug trafficking conspiracy involving additional kilograms of cocaine beyond the 132 seized on the Black Wolfpack.  The district judge agreed with this offense level calculation and denied defense counsel's objection to it.  It is therefore clear that this issue was not merely "overlooked," and Coplin's counsel on appeal has not advanced any other argument that the calculation was incorrect.

Coplin first challenges the district court's imposition of a four-level enhancement based on Coplin's role as a leader of the criminal activity. "We review the imposition of this particular sentencing enhancement, and any predicate factual findings, for clear error." United States v. Ahmed, 51 F.4th 12, 28 (1st Cir. 2022) (quoting United States v. Appolon, 695 F.3d 44, 70 (1st Cir. 2012)). "Where the raw facts are susceptible to competing inferences, the sentencing court's choice between those inferences cannot be clearly erroneous." McKinney, 5 F.4th at 107 (quoting United States v. McCormick, 773 F.3d 357, 359 (1st Cir. 2014)). "Given this deferential standard of review, battles over a defendant's role in the offense 'will almost always be won or lost in the district court.'" United States v. Meléndez-Rivera, 782 F.3d 26, 29 (1st Cir. 2015) (quoting United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995)).

The federal Sentencing Guidelines provide for a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). By contrast, the guidelines provide for only a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Id. at § 3B1.1(b). These enhancements require both a status determination of whether

the defendant acted as an "organizer or leader" or "manager or supervisor," as well as a determination of the scope of the criminal activity -- i.e., "that the criminal activity met either the numerosity or the extensiveness benchmarks established by the [G]uideline[s]." Ahmed, 51 F.4th at 28 (alterations in original) (quoting United States v. Hernández, 964 F.3d 95, 101 (1st Cir. 2020)). On appeal, Coplin focuses solely on the status determination rather than the scope of criminal activity. He argues that he was merely a supervisor and not a leader, therefore warranting a three-level increase instead of four.[2]

In making the determination of whether someone is an "organizer or leader" or merely a "manager or supervisor," courts should consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal

---

[2] The government argues that Coplin has waived this argument on appeal given that Coplin's discussion of this issue is just over a page and contains no standard of review or citations to case law. We have repeatedly held that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). We need not here determine whether the brevity of Coplin's argument constituted waiver, given that it fails on the merits. However, we reiterate that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Id.

activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 cmt. n.4. "This list is 'representative rather than exhaustive,' and 'proof of each and every factor' is not necessary to establish that a defendant acted as an organizer or leader." United States v. Rivera, 51 F.4th 47, 52 (1st Cir. 2022) (quoting United States v. Tejada-Beltran, 50 F.3d 105, 111 (1st Cir. 1995)). For the enhancement to apply, the defendant "must have led or organized at least one other criminal actor -- and not just a criminal activity -- on at least one occasion." Ahmed, 51 F.4th at 28 (emphases in original).

In conducting this assessment, the district court recited many of the undisputed facts from the PSR regarding co-defendant Resto's testimony. The court noted that Resto testified that Coplin initiated the conspiracy with the idea of purchasing a vessel to buy drugs in St. Thomas and bring them to Puerto Rico. Resto testified that Coplin twice directed him to buy vessels and gave him $30,000 to buy the second vessel, which was the Black Wolfpack. He further testified that Coplin initiated and directed several trips, including asking Resto to go St. Thomas to learn more details about the route and asking him to propose running a test trip with two kilograms of cocaine. Resto indicated that, before every trip, Coplin would plan, meet with the coconspirators, tell them what they needed to do, and give them petty cash for food, gas, and supplies. Coplin and his business partner counted

the money in Coplin's home, and Coplin was the one to pay co-defendants.

On appeal, Coplin does not advance any argument that these findings are inaccurate or that they fail to show that he led or organized at least one coconspirator on at least one occasion. Cf. Hernández, 964 F.3d at 102-05 (concluding organizer enhancement was warranted where defendant instructed coconspirator on one occasion). Rather, Coplin points to the existence of another "leader that was paying for everything and that was providing the strategic overview of the operation" as the sole basis for finding that Coplin "had a smaller part and played a role akin to a manager." But the Sentencing Guidelines and our case law make clear that the existence of another leader -- even one superior to Coplin in the scheme's hierarchy -- does not foreclose the possibility of Coplin also acting as a leader. See Appolon, 695 F.3d at 70; United States v. Casas, 356 F.3d 104, 129 (1st Cir. 2004) ("The mere fact that [the defendant] was subordinate to [a coconspirator] does not establish, without more, that [he] was not an organizer or leader of the conspiracy."); U.S.S.G. § 3B1.1 cmt. n.4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."). Standing alone, this argument therefore cannot invalidate the district court's finding that Coplin was a leader himself. Coplin advances no other arguments

in support of his contention, and the district court's factual findings regarding Coplin's role in the conspiracy certainly support the inference that Coplin was indeed a leader. The district court therefore did not clearly err in applying the four-level enhancement.

**B.**

Coplin's second procedural argument is that the district court failed to consider his cooperation with the government under 18 U.S.C. § 3553.

Preserved claims of procedural sentencing error are reviewed under an abuse of discretion standard. United States v. Viloria-Sepulveda, 921 F.3d 5, 8 (1st Cir. 2019) (citing Gall v. United States, 552 U.S. 38, 55 (2007)). Coplin raised the governmental cooperation argument before the district court, so it is preserved.

Under 18 U.S.C. § 3553, a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" in determining the appropriate sentence. 18 U.S.C. § 3553(a)(1). This broad provision includes as a factor "the defendant's cooperation with the government." United States v. Landrón-Class, 696 F.3d 62, 77 (1st Cir. 2012). We have thus held that a sentencing court has discretion under § 3553 to consider a defendant's cooperation with the government

- 11 -

even if the government has not made a U.S.S.G. § 5K1.1 motion for a downward departure in sentencing. Id.

Here, however, there is no indication that the district court failed to consider the defendant's cooperation with the government. During the sentencing hearing, defense counsel raised the issue of cooperation at the outset, and the government attorney responded in depth. The government's position, reiterated on appeal before this court, was that although the defendant had met with the government on three different occasions, he had not substantially assisted the government and had not identified any coconspirators by name until the third interview. After hearing these arguments, among others, the district court did not apply any downward adjustments for cooperation with the government.

It is true that the district court did not explicitly mention Coplin's cooperation in discussing the imposed sentence. But "a sentencing court is not required to address frontally every argument advanced by the parties, nor need it dissect every factor made relevant by 18 U.S.C. § 3553." Landrón-Class, 696 F.3d at 78 (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 40-41 (1st Cir.2006)); see also United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006) (a sentencing court "is not required to address [the § 3553(a)] factors, one by one, in some sort of rote incantation"). "When a defendant has identified potentially mitigating sentencing factors and those factors are thoroughly

debated at sentencing, the fact that the court 'did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored.'" United States v. Díaz-Lugo, 963 F.3d 145, 152 (1st Cir. 2020) (quoting United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012)). Here, the district court heard arguments by both parties on the issue of governmental cooperation and explicitly noted that it had "considered the . . . sentencing factors set forth in Title 18, United States Code, Section 3553(a)." We therefore find Coplin's argument that the court failed to consider this factor unavailing.

## C.

We next turn to Coplin's claim that his sentence was substantively unreasonable due to the disparity between his sentence and those of two co-defendants.

We review preserved challenges to the substantive reasonableness of a sentence for abuse of discretion. See Viloria-Sepulveda, 921 F.3d at 8 (citing Gall, 552 U.S. at 55). Coplin raised this argument before the district court, so it is preserved.

Under § 3553(a)(6), courts are directed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); see also United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015). This provision is "primarily aimed at national disparities, rather than those

between co-defendants," but a sentence may nevertheless be "substantively unreasonable because of the disparity with the sentence given to a codefendant." Reyes-Santiago, 804 F.3d at 467 (first quoting United States v. Rivera-Gonzalez, 626 F.3d 639, 648 (1st Cir. 2010); and then quoting United States v. Reverol-Rivera, 778 F.3d 363, 366 (1st Cir. 2015)).

To establish a well-founded claim of sentencing disparity, a defendant must "compare apples to apples." Id. at 467. Where "material differences between the defendant and the proposed comparator suffice to explain the divergence," a sentencing disparity claim is unlikely to prevail. United States v. Demers, 842 F.3d 8, 15 (1st Cir. 2016); see also Reyes-Santiago, 804 F.3d at 467 ("We have routinely rejected disparity claims . . . because complaining defendants typically fail to acknowledge material differences between their own circumstances and those of their more leniently punished confederates.").

Here, Coplin compares his sentence of 262 months to the 60-month sentence and 120-month sentence of coconspirators Katerín Martínez-Alberto and Alexandria Andino-Rodríguez, respectively. Coplin notes that both the coconspirators proceeded to trial whereas he pleaded guilty and calls it "foul play" that his sentence then exceeded theirs by more than a decade. But Coplin fails to address key ways in which he is not similarly situated to these co-defendants. Chiefly, as the district court found, Coplin

was a <u>leader</u> of the conspiracy and not a mere participant like Martínez and Andino.  Cf. <u>Reverol-Rivera</u>, 778 F.3d at 366 (noting "differences in culpability can justify disparate sentences among co-defendants"); <u>United States</u> v. <u>Rivera-Maldonado</u>, 194 F.3d 224, 236 (1st Cir. 1999) (finding a leader and subordinates were not similarly situated).  These co-defendants therefore are not fair comparators, and we cannot find an unwarranted sentencing disparity here.

Furthermore, the court sentenced Coplin on the lowest end of the guideline range, which, as we have explained above, was properly calculated.  "A challenge to the substantive reasonableness of a sentence is particularly unpromising when the sentence imposed comes within the confines of a properly calculated [guideline sentencing range]," "particularly . . . where, as here, the sentence is at the nadir of the range."  <u>Demers</u>, 842 F.3d at 15.

Based on the foregoing, we find that the district court did not abuse its discretion in imposing a 262-month sentence.

## III.

For the reasons above, the sentence is **<u>affirmed</u>**.