# United States Court of Appeals
## For the First Circuit

No. 21-1531

UNITED STATES OF AMERICA,

Appellee,

v.

NATHANIEL RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Thompson, Circuit Judges.

Ruth O'Meara-Costello and Zalkind Duncan & Bernstein LLP on brief for appellant.
Darcie N. McElwee, United States Attorney, and Noah Falk, Assistant United States Attorney, on brief for appellee.

October 14, 2022

**SELYA**, **Circuit Judge**.    In  this  sentencing  appeal,

defendant-appellant Nathaniel Rivera strives to persuade us that

the district court erred in elevating his guideline sentencing

range (GSR) on account of his perceived leadership role in the

criminal enterprise.  Because our appraisal of the record reveals

that the defendant's sentence rests on a sufficiently sturdy plinth

of factual findings, we affirm the challenged sentence.

## I

This case has its genesis in a home invasion and robbery

committed by the defendant and four co-conspirators.  Because the

appeal follows a guilty plea, we draw the facts from "the non-

binding plea agreement . . . , the change-of-plea colloquy, the

undisputed portions of the presentence investigation report (PSI

Report), and the transcript of the disposition hearing."  United

States v. Bermúdez–Meléndez, 827 F.3d 160, 162 (1st Cir. 2016).

In  May  of  2019,  the  defendant  and  Eric  Mercado  began

formulating plans to rob a home in York, Maine.  The defendant

knew the homeowner (R.S.) through, among other things, prior drug

transactions.  He thought that the robbery would yield a harvest

of money and/or drugs.

By May 7, the scheme had been fleshed out and Mercado

wanted to conduct the home invasion that night.  The defendant

convinced him to wait a few days, and the co-conspirators undertook

the robbery on May 10.

In accordance with their plan, the defendant and two co-conspirators, Rhiannon Mercado (Ms. Mercado) and Jennirez Urbaez, coordinated a party at R.S.'s house. Just before arriving, the defendant relayed R.S.'s address to the other two co-conspirators (Mercado and Steven Hardy). Once inside, the defendant texted Mercado, telling Mercado that he had locked R.S.'s dogs in the mudroom and that he thought that R.S. had cash on hand.

The party continued into the early morning hours. Around 12:40 a.m., the three co-conspirators who were attending the party convinced R.S. that they should all go for a dip in the hot tub outside the house. Shortly after getting into the hot tub, the defendant left (ostensibly to use the bathroom). While inside the house, he unlocked the front door and texted Mercado "now." The defendant then returned to the hot tub.

In short order, Mercado and Hardy entered the house and made their way to the hot tub, brandishing firearms. They ordered R.S. to lie down, but he ran into the house. Mercado and Hardy gave chase and fired their weapons during a brief skirmish. R.S. sustained minor injuries to his leg but managed to escape. Surveillance video shows that, as the co-conspirators fled the scene, the defendant instructed three of them to take his bag and drive his car so that he could steal R.S.'s truck.

Later that month, the authorities arrested the defendant. In due course, a federal grand jury sitting in the

District of Maine returned a single-count indictment charging the defendant and others with conspiracy to commit Hobbs Act robbery. See 18 U.S.C. § 1951(a).  In a superseding four-count indictment, the defendant was again charged with one count of conspiracy to commit Hobbs Act robbery.

On February 18, 2020, the defendant entered a guilty plea.  In the PSI Report, the probation office concluded that the defendant was an organizer of the robbery effort, adding that "[b]ut for Rivera, the instant offense would not have occurred. He held an organizing role (with Mercado)."  (Emphases in original).  Building on this foundation, the PSI Report recommended a four-level role-in-the-offense enhancement.  See USSG §3B1.1(a). The defendant objected to the enhancement, but the probation office held firm.

The disposition hearing was held on July 21, 2021.  The final version of the PSI Report recommended a total offense level of thirty-one (which included the four-level enhancement) and a criminal history category of IV, yielding a GSR of 151 to 188 months.  Despite previously objecting to the section 3B1.1(a) role-in-the-offense enhancement, the defendant did not object to these guideline calculations either in his sentencing memorandum or at the disposition hearing.

- 4 -

The district court accepted the guideline calculations adumbrated in the PSI Report. With respect to the role-in-the-offense enhancement, the court said:

> There's no dispute as to what happened here. Mr. Rivera was the spark, the idea man, behind the notion of performing a home invasion against an individual who lives in York, Maine. He communicated first with Mr. Mercado and then others who over the course of two days plotted the home invasion, targeting someone who they believed would be in possession of contraband and a large amount of cash and other valuables. . . .
>
> Mr. Rivera [has received] offense points [sic] under the guidelines as being a leader/organizer of this conspiracy, which he was. The government has characterized him as the mastermind; I'm not sure that mastermind is entirely appropriate. He certainly was the instigator of the conspiracy. But based on the information I've received it seems to me that Mr. Mercado was the primary mover in terms of the design and then execution of the event. In any event, Mr. Rivera bears great culpability and responsibility for giving birth to this horrendous crime.

In the end, the district court varied downward because of the defendant's troubled childhood and the fact that his criminal history category overstated the seriousness of his criminal past. These downward variances reduced the total offense level to twenty-eight and the criminal history category to III, yielding a revised GSR of 97 to 121 months. The court then sentenced the defendant at the bottom of the modified range, imposing a ninety-seven months' term of immurement. When

- 5 -

explaining the sentence, the court concluded, "the sentence I would impose today would be the same, untethered from the guidelines; that is, based upon the 3553(a) sentencing factors[,] I'm satisfied that the sentence that I've now articulated is just, fair, and appropriate."

This timely appeal followed.

**II**

This is a rifle-shot appeal. In it, the defendant raises only a single claim of error: a challenge to the four-level role-in-the-offense enhancement. And he concedes that — because he did not object to this enhancement at sentencing — review is only for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

"The plain error hurdle is high." United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989). "Review for plain error entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60.

"Appellate review of a criminal defendant's claims of sentencing error involves a two-step pavane." United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). "[W]e first determine whether the sentence imposed is procedurally reasonable

and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). Here, however, the defendant advances only a procedural objection — and we limit our analysis to that objection. In doing so, we remain mindful that inquiries into a defendant's role in the offense are "notoriously factbound, and struggles over a defendant's role in the offense 'will almost always be won or lost in the district court.'" United States v. Ventura, 353 F.3d 84, 89 (1st Cir. 2003) (quoting United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995)).

The first two elements of the plain error construct lend themselves to joint appraisal. To satisfy these elements, the defendant must show that the district court's application of the four-level role-in-the-offense enhancement was so far afield as to constitute "clear or obvious" error. Duarte, 246 F.3d at 60. As we explain below, the defendant cannot make this showing.

We begin with the applicable guideline. That guideline prescribes a four-level enhancement if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG §3B1.1(a). By contrast, the guideline prescribes only a three-level enhancement if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." USSG §3B1.1(b).

The government bears the burden of proving the applicability of upward role-in-the-offense adjustments by a preponderance of the evidence. See United States v. McCormick, 773 F.3d 357, 359 (1st Cir. 2014). To carry this burden with respect to the organizer/leader enhancement, the government's evidence must satisfy both a scope requirement (that is, the evidence must show that the enterprise involved five or more participants or was otherwise extensive) and a status requirement (that is, that the defendant acted as an organizer or leader of the enterprise). See United States v. Arbour, 559 F.3d 50, 53 (1st Cir. 2009). Here, the defendant acknowledges that the unlawful enterprise satisfied the scope requirement: it clearly involved five participants. He argues, though, that the sentencing court committed plain error when it determined that the defendant operated as an organizer of the enterprise. We think not.

The baseline rule is that a defendant acts "as an organizer, though perhaps not as a leader, if he coordinates others so as to facilitate the commission of criminal activity." United States v. Tejada-Beltran, 50 F.3d 105, 112 (1st Cir. 1995). The sentencing guidelines suggest a non-exhaustive list of factors that courts should consider when distinguishing a role that involves organization and leadership from a role that involves merely management and supervision. These factors are:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Id. at 111 (quoting USSG §3B1.1, cmt. n.4). This list is "representative rather than exhaustive," and "proof of each and every factor" is not necessary to establish that a defendant acted as an organizer or leader. Id.

The defendant stresses the sentencing court's finding that "Mr. Mercado, not Mr. Rivera, was the 'primary mover in terms of the design and then execution of the event.'" He suggests that because the sentencing court found that Mercado was the "primary mover," it could not pin the label of organizer on the defendant. This suggestion, however, overlooks the case law holding that "a defendant need not exercise complete hegemony over the entire criminal enterprise in order to qualify as an organizer." United States v. Ilarraza, 963 F.3d 1, 14 (1st Cir. 2020); see USSG §3B1.1, cmt. n.4 ("There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy."). Thus, despite the finding that Mercado was the "primary mover" of the execution of the conspiracy, there was ample room for the court to hold that the defendant was an organizer of the conspiracy. Cf. United States v. Rodríguez-Lozada, 558 F.3d

29, 45 (1st Cir. 2009) (holding that "[e]ven if [the defendant] were subordinate to [his co-conspirator] in the hierarchy of the conspiracy, that would not negate [the defendant]'s leadership role"); Ventura, 353 F.3d at 89-90 (upholding organizer enhancement notwithstanding defendant's argument that "he was only one of several management-level dealers").

Viewed in its totality, the record comfortably supports the sentencing court's determination that the defendant was an organizer of the conspiracy. An organizer, by definition, is "a person who arranges something (such as an event) . . . ." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/organizer (last visited Oct. 14, 2022). Here, the event was the home invasion and robbery. And — in the district court's words — the defendant was the "instigator."

What is more, the defendant was the conspiracy's link to the target. He recruited co-conspirators, "communicat[ing] first with Mr. Mercado and then others." So, too, in the days preceding the robbery, the defendant was intimately involved in the planning of the home invasion. See Tejada-Beltran, 50 F.3d at 112 ("One may be classified as an organizer . . . if he coordinates others so as to facilitate the commission of criminal activity."). He also dictated the timing of the execution of the plot: when Mercado sought to commit the robbery "sooner rather than later," the defendant made the decision to postpone the robbery for three

days.  Cf. United States v. Talladino, 38 F.3d 1255, 1261 (1st Cir. 1994) (holding that when defendant makes unilateral decisions concerning when, where, and how a conspiracy will achieve its criminal goal, "that individual exhibits precisely the sort of characteristics that are emblematic of an organizer or leader"). And, finally, it was the defendant who not only originally conceived the plot to garner money and drugs but who also expanded it to include R.S.'s truck.

Contrary to the defendant's importunings, there is also record evidence that he "exercised some degree of authority or control over another criminal actor." United States v. Garcia-Sierra, 994 F.3d 17, 37 (1st Cir. 2021) (emphasis in original). On the evening of the robbery, for example, the defendant directed when and how his co-conspirators entered the house.  After surreptitiously unlocking the door to allow entry and giving Mercado and Hardy a five-minute warning, he directed them to commence the robbery.  In addition, the defendant — during the escape — instructed his confederates that "you three are taking my car" and asked that someone grab his bag.

Determining whether a defendant is an organizer of a criminal enterprise is a fact-specific task.  See Ventura, 353 F.3d at 89.  One size does not fit all.  In this instance, the uncontested facts chronicled above and the reasonable inferences therefrom suffice to establish that the sentencing court did not

commit clear or obvious error in finding that the defendant was an organizer of the conspiracy.

In reaching this conclusion, we reject the defendant's argument that these facts show, at most, that he operated as a manager or supervisor, not as an organizer. To be sure, a common nucleus of facts often may give rise to different inferences. Even so, a sentencing court's choice between reasonable yet competing inferences cannot be deemed clear or obvious error. As we previously have held, where "a reasonable factfinder could have viewed the appellant's role in one of two different ways . . . [t]his duality lights our path: 'where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous.'" Ilarraza, 963 F.3d at 14 (quoting United States v. Dunston, 851 F.3d 91, 101-02 (1st Cir. 2017)). Thus, even if the court could plausibly have found that the defendant was merely a manager or supervisor, that possibility would not throw shade on its actual finding — also a plausible one — that the defendant was an organizer of the criminal enterprise. See id.

**III**

We add a coda. "[W]e have consistently held that when a sentencing court makes clear that it would have entered the same sentence regardless of the Guidelines, any error in the court's Guidelines calculation is harmless." United States v. Ouellette,

985 F.3d 107, 110 (1st Cir. 2021).  Here, the sentencing court explicitly stated that it would impose an identical sentence without regard to the sentencing guidelines (and by fair implication, without regard to the appropriateness of its role-in-the-offense determination).  Given this statement, any error in the guideline calculations — even if one occurred — would be harmless.  See United States v. Ortiz-Álvarez, 921 F.3d 313, 319 (1st Cir. 2019); United States v. Acevedo-Hernández, 898 F.3d 150, 172 (1st Cir. 2018); United States v. Tavares, 705 F.3d 4, 27-28 (1st Cir. 2013); United States v. Marsh, 561 F.3d 81, 86 (1st Cir. 2009).

**IV**

We need go no further.  For the reasons elucidated above, the challenged sentence is

**Affirmed**.