# United States Court of Appeals

## For the First Circuit

Nos. 22-1343
     22-1344

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERT POLIERO, a/k/a Charlie,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Gelpí, Circuit Judges.

Jeffrey W. Langholtz on brief for appellant.
Darcie N. McElwee, United States Attorney, and Benjamin M.
Block, Assistant United States Attorney, on brief for appellee.

August 30, 2023

**SELYA**, **Circuit Judge**.  In these consolidated sentencing appeals, defendant-appellant Robert Poliero claims that the district court erred by adopting a four-level role-in-the-offense enhancement when formulating his guideline sentencing range — an enhancement premised on the degree of organizational responsibility that he allegedly shouldered within the charged conspiracy.  See USSG §3B1.1(a).  Because we conclude that the record supports the factual findings underpinning the enhancement, we affirm the appellant's sentence.

## I

We briefly rehearse the relevant facts and travel of the case.  Because this appeal follows a guilty plea, "[w]e draw the facts from the plea agreement, the change-of-plea colloquy, the [undisputed portions of the] presentence investigation report (PSI Report), and the transcript of the disposition hearing."  United States v. Almonte-Nuñez, 771 F.3d 84, 86 (1st Cir. 2014).

## A

In July of 2018, a new drug-trafficking organization (DTO) began operating in Maine.  Joel Strother headed up the DTO. Strother took the lead in obtaining methamphetamine from suppliers, directing drug distribution, recruiting personnel to assist in the transportation and sale of drugs, managing the DTO's finances, and the like.

Strother's leadership and control of the DTO was not to last. In April of 2019, Strother fled from the area for undisclosed reasons. Following his abrupt decampment, the appellant — who was already a member of the DTO — took on more responsibility for some of the tasks that Strother had previously handled. Notably, the appellant assumed responsibility for acquiring methamphetamine from suppliers. As a part of his acquisition activities, the appellant determined the monthly quantity of methamphetamine that the DTO would purchase. And once he acquired the methamphetamine, the appellant supplied members of the DTO with the drugs that they needed for further distribution and sale.

The authorities eventually caught wind of the DTO's activities. On May 19, 2019, law enforcement officers — acting on information that the appellant was transporting controlled substances — stopped his vehicle while he was driving through York, Maine. A search of the vehicle turned up approximately 6,100 grams of a mixture containing methamphetamine, a handgun, and three boxes of ammunition. The appellant was arrested on the spot.

As a part of their follow-up investigation, officers procured a warrant to search the appellant's Facebook account. Perscrutation of the messages sent and received in that account shed light on the role that the appellant played in the DTO following Strother's departure. The messages showed that, on

numerous occasions, the appellant directed other members of the DTO to send or collect money in relation to the purchase and sale of methamphetamine. In a representative instance, the appellant sent $2,000 or more to an associate, directing that person to pay $1,000 to a particular supplier, take a $100 fee for himself, and put the balance in a safe.

**B**

On June 12, 2019, a federal grand jury sitting in the District of Maine handed up an indictment charging the appellant with a single count of possession with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine. See 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). In a subsequent indictment, the appellant (along with sixteen other individuals) was charged with conspiracy to distribute and to possess with intent to distribute fifty grams or more of methamphetamine or 500 grams or more of a mixture or substance containing methamphetamine. See id. §§ 841(a)(1), (b)(1)(A)(viii), 846. The appellant initially maintained his innocence but later changed course: on July 21, 2021, he entered guilty pleas to both charged counts.

The probation office then prepared the PSI Report. In that report, the probation office concluded — as relevant here — that the appellant was an organizer or leader of the charged conspiracy. Thus, it recommended that a four-level role-in-the-offense enhancement should apply in the calculation of the

appellant's guideline sentencing range. See USSG §3B1.1(a). The appellant objected to this enhancement, but the probation office held firm.

After applying all the relevant enhancements and reductions, including the role-in-the-offense enhancement, the final version of the PSI Report set the appellant's total offense level at forty-nine. Pursuant to the guidelines commentary, however, the appellant's total offense level was treated as forty-three. See USSG Ch. 5, Pt. A, cmt. n.2. Coupled with a criminal history category of I, this yielded a guideline sentencing range of life imprisonment.

The district court convened the disposition hearing on May 2, 2022. In advance of the hearing, the appellant submitted a sentencing memorandum in which he again objected to the applicability of the role-in-the-offense enhancement. He argued that his role in the DTO warranted at most a two-level enhancement. See USSG §3B1.1(c). The government, in turn, argued in favor of the four-level enhancement. The district court sided with the government: it found that the appellant had "recruited accomplices, instructed other participants to make sales or purchases of methamphetamine, and directed other participants to send or collect money for drugs." Applying the four-level enhancement, the district court computed the appellant's total offense level as forty-four and — pursuant to the guidelines

commentary previously cited — reduced that level to forty-three. Matching this offense level with the appellant's criminal history category (I), the court determined the appellant's guideline sentencing range to be life imprisonment.

At the end of the disposition hearing, the court imposed a downwardly variant sentence of 216 months' imprisonment on each count of conviction (to run concurrently). The court added that the sentence was "completely untethered from the guidelines" and that it "would impose the same sentence even if the applicable sentencing guideline range would have been reduced by any or all of the objections made by the defendant." This timely appeal followed.

## II

These are rifle-shot appeals: the appellant challenges only the district court's application of the four-level enhancement for his role in the offense. Generally, "[a]ppellate review of a criminal defendant's claims of sentencing error involves a two-step pavane." United States v. Miranda-Díaz, 942 F.3d 33, 39 (1st Cir. 2019). Under this framework, "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). Here, however, the appellant challenges only the procedural

reasonableness of his sentence, and we cabin our analysis accordingly.

The appellant's claim of error was preserved below and, thus, our review is for abuse of discretion. See United States v. Ilarraza, 963 F.3d 1, 7 (1st Cir. 2020). This mode of review is neither monolithic nor appellant-friendly. "[U]nder its aegis, we assay the district court's findings of fact for clear error." Id. at 7-8. In addition, "we afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, and evaluate its judgment calls for abuse of discretion." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). "[W]e remain mindful that inquiries into a defendant's role in the offense are 'notoriously factbound.'" United States v Rivera, 51 F.4th 47, 51 (1st Cir. 2022) (quoting United States v. Ventura, 353 F.3d 84, 89 (1st Cir. 2003)). As a result, "battles over a defendant's status . . . will almost always be won or lost in the district court." United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995).

Against this backdrop, we turn to the key guideline provision. That provision directs sentencing courts to apply a four-level enhancement if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG §3B1.1(a). "The government bears the burden of proving the applicability of upward role-in-the-

offense adjustments by a preponderance of the evidence." Rivera, 51 F.4th at 51. To carry its burden, the government must adduce evidence that satisfies both the scope and status requirements. See id.

The scope requirement is satisfied if the evidence "show[s] that the enterprise involved five or more participants or was otherwise extensive." Id. That requirement need not detain us: the record shows quite plainly that the DTO was a sprawling organization that easily crossed the guideline provision's numerosity threshold — and the appellant does not argue to the contrary.

By contrast, the status requirement bears the brunt of the appellant's attack. To satisfy that requirement, the government must show that the appellant "acted as an organizer or leader of the enterprise." Id. The district court found that the government had carried the devoir of persuasion on this point, and the appellant asserts that this finding was clearly erroneous. We disagree.

"To qualify as an 'organizer,' 'the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime.'" United States v. Hernández, 964 F.3d 95, 102 (1st Cir. 2020) (quoting United States v. Carrero-Hernández, 643 F.3d 344, 350

(1st Cir. 2011)); see United States v. Tejada-Beltran, 50 F.3d 105, 112 (1st Cir. 1995) ("One may be classified as an organizer, though perhaps not as a leader, if he coordinates others so as to facilitate the commission of criminal activity."). The guidelines offer a list of factors that courts should consider in determining whether a defendant exercised such control within a particular organization. These factors include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG §3B1.1, cmt. n.4. "This list is 'representative rather than exhaustive,' and 'proof of each and every factor' is not necessary to establish that a defendant acted as an organizer or leader." Rivera, 51 F.4th at 52 (quoting Tejada-Beltran, 50 F.3d at 111).

Viewed in its entirety, the record supports the district court's determination that the appellant acted as an organizer within the DTO. The record reveals multiple instances in which the appellant directed and coordinated the actions of others so as to carry out the DTO's illegal activities and achieve its unlawful objectives. For example, record evidence shows that the appellant instructed others regarding how and when to send, parcel out, and collect money in exchange for drugs. There is, moreover, evidence

that the appellant recruited at least one other person to traffic drugs for the DTO. Given this body of evidence, we conclude that the district court did not commit clear error in finding that the appellant satisfied the status requirement. It follows, then, that the district court acted within the ambit of its discretion in imposing the four-level "organizer" enhancement.

The appellant resists this conclusion. He insists that certain pieces of evidence identified by the government are not, by themselves, sufficient to show that he acted as an organizer. Specifically, he contends that the fact that he was found in possession of a large quantity of methamphetamine is not enough to show that he was an organizer. But the appellant is setting up a straw man: there is nothing in the record suggesting that the district court imposed the role-in-the-offense enhancement based on the singular fact that the appellant possessed a large quantity of illegal drugs. The contrary is true. The court's imposition of the enhancement rested on a holistic appraisal of the facts in the record that showed, with conspicuous clarity, the appellant's exercise of control over other actors within the DTO.

There is one loose end. The appellant seems to suggest that — even if he did exercise some degree of control over others — he did not exercise such control for a sufficiently long period of time to be considered an organizer. This argument is poorly developed: the appellant cites no authority for the proposition that an individual must

- 10 -

exercise control over others for some particular interval in order to be classified as an organizer for purposes of section 3B1.1. Even were we to overlook the likely waiver that attends this suggestion, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."), our case law counsels against adoption of any such temporal requirement, cf. Hernández, 964 F.3d at 102-03 (concluding that evidence showing that defendant coordinated activities of another individual on one occasion sufficed to justify application of leadership enhancement). Thus, we reject the appellant's suggestion that his exercise of control was of an insufficient duration to ground application of the four-level role-in-the-offense enhancement.

## III

We need go no further.[1] For the reasons elucidated above, the challenged sentence is

**Affirmed.**

---

[1] Inasmuch as we have upheld the role-in-the-offense enhancement, we need not reach the government's alternative argument that the sentence may stand — notwithstanding the fate of the enhancement — because the district court explicitly untethered it from the guidelines. See, e.g., United States v. Ouellette, 985 F.3d 107, 110 (1st Cir. 2021) (holding that where district court would have imposed same sentence regardless of guidelines calculations, any error in guideline calculations is harmless); United States v. Tavares, 705 F.3d 4, 26-27 (1st Cir. 2013) ("An error is harmless if it 'did not affect the district court's selection of the sentence imposed.'" (quoting Williams v. United States, 503 U.S. 193, 203 (1992))); see also Rivera, 51 F.4th at 53 (collecting cases).